IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TIFFANY B. SNIPES, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION NO. 2:11cv1000-SRW |
| NORTHEAST PHARMACEUTICALS, INC., | ) ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tiffany Snipes, a pharmacist, brings this action against her former employer Northeast Pharmaceuticals, Inc. ("NEP") pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Plaintiff alleges that she worked in excess of forty hours in various work weeks, including her travel time for short-term special assignments, and that NEP willfully refused to pay her the time-and-a-half overtime premium for the excess hours. She further alleges that she complained about defendant's failure to pay her overtime as required by the FLSA and that NEP terminated her employment shortly thereafter in retaliation for her complaint. In Count One, plaintiff asserts a claim for unpaid overtime; Count Two is a retaliatory discharge claim. (Doc. # 1).

This action is presently before the court on the motion for summary judgment filed by defendant on December 17, 2012. (Doc. # 18). Defendant contends that plaintiff was an exempt employee not entitled to overtime pay under the FLSA and that – even if she were not – the time she spent in her daily commute between her home in Montgomery and NEP's

pharmacy in Dothan is not compensable, and plaintiff has failed to present evidence of any uncompensated work time. Defendant further contends that plaintiff cannot establish either a *prima facie* case of retaliatory discharge or that the reason articulated by the decision-maker – *i.e.*, that he terminated plaintiff's employment because her part-time position was eliminated and she refused NEP's offer of a full-time position – is pretextual. Upon consideration of the motion for summary judgment, the court concludes that it is due to be granted.

## BACKGROUND[1]

NEP owns and operates several pharmacies, some of which are located in Alabama. LaTonage Porter is the Regional Pharmacy Director for NEP. The pharmacy managers at each of NEP's five locations report to Porter, and she reports directly to Daniel Mims, NEP's owner and President. Porter hired plaintiff as a part-time pharmacist for NEP in September 2010. Initially, plaintiff worked as a staff pharmacist at NEP's Montgomery pharmacy, under the supervision of James Littlejohn, the pharmacy manager. In April of 2011, plaintiff began working "travel" assignments for NEP; in her new assignment, plaintiff reported directly to Porter.

According to January Green, who handles NEP's Human Resources and payroll

---

[1] As it is required to do, the court has viewed the evidence presented on the motion for summary judgment in the light most favorable to the plaintiff. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992). The court considers any objections not made to the use or admissibility of the evidence waived for purposes of this motion. Davis v. Howard, 561 F.2d 565, 570 (5th Cir. 1977).

function, plaintiff was paid a salary for twenty-four hours of work each week that plaintiff would receive even if she worked fewer hours, and an additional hourly rate for anything in excess of twenty-four hours per week. She testified that plaintiff did not have to turn in a time sheet unless she worked "over twenty-four hours" and that, if Green received a time sheet from plaintiff showing more than twenty-four hours of work, she "paid her for the overage at her straight hourly rate." On the "employee information sheet" that Green completed when plaintiff was hired, Green did not indicate that plaintiff would earn a base salary. Instead – on the line following the printed entry "Salary: $ " – Green wrote only "60$^{00}$/hr." Green testified that she did so because she had to use the hourly rate to calculate plaintiff's annual salary. (Green depo., pp. 9-10, 15-34, 42-43 and Exhibit 1; Mims depo., pp. 7, 11, 14, 29-30; Porter depo., p. 29; Snipes depo., pp. 115-16).

Plaintiff testified that she never had any "discussion" with NEP about plaintiff's being paid a base salary and additional compensation for extra hours; instead, "the discussion was that [she] was going to be paid an hourly rate for the hours that [she] worked." (Snipes depo., p. 124; see also pp. 68-70, 75). Plaintiff's pay records reflect that NEP paid plaintiff the same amount ($3,120.00) in each semi-monthly paycheck issued to plaintiff from September 22, 2010 until April 22, 2011. (Snipes depo., pp. 70-71 and Exhibit 6). Plaintiff testified that she received the same amount of pay for each pay period during this time even though the hours that she worked fluctuated between pay periods depending on "how the days of the week fell" in relation to the semi-monthly pay period. (Snipes depo., pp. 197-98;

3

see also id. pp. 69-70). She stated that, before she began the travel assignment, she was scheduled to work "about twenty-four" hours each week. (Id., p. 61). In September 2010, plaintiff sent two e-mails to January Green, listing the days on which she had worked for each of the two pay periods that month. Plaintiff did so because she thought, at that time, that she was supposed to "submit [her] hours," but that she "later learned that they were keeping up with it and [she] didn't have to." (Snipes depo., pp. 201-02 and Exhibit 20). Plaintiff did not include the number of hours in her e-mails to Green because "[i]t was just an eight-hour shift each day." (Snipes depo., p. 202). Plaintiff's e-mails to Green reflect that plaintiff worked six days in the first pay period for September 2010 and eight days in the second pay period. (Exhibit 20 to Snipes depo.).

Plaintiff's pay records demonstrate that she received the same pay – $3120.00 – for both pay periods, despite the difference in hours of work. (Snipes depo., p. 50 (plaintiff's testimony that she was paid a week after the end of the pay period), p. 71, and Exhibit 6 (paychecks issued 9/22/10 and 10/7/10)). Additionally, plaintiff worked only three days in the final pay period of June 2011, but her paycheck issued on July 7, 2011 was in the amount of $3120.00. (See Snipes depo., pp. 73-74, 100 and Exhibits 7-9, 18, 21).[2] Plaintiff's first paycheck on September 7, 2010 and her final paycheck on July 22, 2011 included only amounts designated by NEP as "Hourly" pay – $780.00 and $365.00, respectively; the pay records reflect that NEP paid plaintiff no amount designated as "salary" for the pay periods

---

[2] There is no evidence of record as to the number of hours plaintiff worked on each of the three days.

4

covered by these paychecks.  (Exhibit 6 to Snipes depo.).  As to the first check, plaintiff testified that when she first started working for NEP, she "didn't work like three days each week.  It was like a few hours of training.  Those were training hours." (Snipes depo., pp. 196-97).  The July 22, 2011, paycheck, according to plaintiff, represented payment for "[t]he last travel sheets [she] submitted." (Id., p. 200).  Plaintiff did not perform any work for NEP during July 2011; her last work for NEP was her travel assignment to Dothan from June 20 through June 22. (Snipes depo., pp. 73-74, 100).

When plaintiff first began reporting to Porter, she told Porter that her goal was to transition to a full-time position.  Porter told plaintiff that NEP had the hours "available" and would be able to give plaintiff 32 to 40 hours per week in the travel position. (Id., pp. 145-148).  Porter told plaintiff that she would receive "full-time pay, which was thirty-two to forty hours, [and] that [she] would be reimbursed for her gas." (Id., p. 128).  Plaintiff's first travel assignment was at NEP's pharmacy in Mobile.  On April 18, 2011, plaintiff e-mailed Porter about the Mobile assignment:

> I have been considering this trip to Mobile.  This endeavor is not proving to be a mutually beneficial opportunity for all parties concerned.  Maybe we should have discussed all of the details prior to my commitment.  It seems that some things have changed since our initial discussion.
>
> I will travel to Mobile this week, but I will not be able to continue making the trip after this week.
>
> I will be traveling for six hours, yet I am only being paid for four days of work per week. Yet that is basically five days of time in an allocated work week. Now, instead of getting the straight $50 a day for food, it is requested that I turn in receipts after I return.  I am incurring additional wear-and-tear on my

> car.
>
> I am not trying to be difficult. But nothing about this endeavor is benefitting me or in my best interest. I agreed to do this to help the company, but I am almost being made to feel like there is mistrust with the way in which matters are being handled.

(Snipes depo., p. 136 and Exhibit 12). Porter responded:

> Tiffany, we can talk more about this on Thursday. I'm sorry that you feel taken advantage of. I appreciate you working tomorrow and Wednesday but I'll figure something else out for next week and beyond. Your driving time was never discussed before now. We could have worked something out. But that's okay, it probably worked out for the best. I'm driving down right now and shouldn't be texting but I wanted to respond. Have a good evening.

(Id.).

During her deposition, defense counsel asked plaintiff about the e-mail, and inquired what she meant by the second sentence, "Maybe we should have discussed all the details prior to my commitment." (Snipes depo., p. 137). Plaintiff responded:

> I thought that reimbursement for travel time was standard in a travel assignment so I didn't think that that was something that we needed to discuss because I thought it was just standard in what you were to receive, so that is why I said that. She said that she would take care of me. I took her at her word that she would, not knowing that she didn't include my travel time as part of my hours.

(Id.). Plaintiff further testified that, after the email exchange, she had a telephone conversation with Porter in which " it was determined that [plaintiff] would be compensated for [her] travel time." (Id., p. 138). Thereafter, Porter assigned plaintiff to work on an "as needed" basis – two or three days each week, typically – at NEP's pharmacy in Dothan. Plaintiff initially stayed at hotels in Dothan. After a couple of "bad experiences" with the

hotels, plaintiff told Porter that she would be "traveling back and forth" – a drive of approximately two hours each way – to Dothan.  (Snipes depo., pp. 106-10, 115-16, 123-24 and Exhibits 12 ).  The time sheets that plaintiff submitted for payment included the hours she spent commuting each day. (Snipes depo., pp. 62-63 and Exhibits 4 and 5).  When plaintiff received her paycheck for the first pay period in June, she asked Porter to check on her  pay because plaintiff had not been paid for all of her travel time.  Porter spoke to Green, who told her that plaintiff would be paid for her time spent driving down and back only once each week.  (Porter depo., pp. 37-46; see also Snipes depo., pp. 44-49).

> On June 21, 2011, Porter emailed the following response to plaintiff:
>
> I have been dreading sending this e-mail. Unfortunately the company has decided not to reimburse your drive time with the exception of 4 hours per week. It was their understanding that we were paying you for time actually worked, reimbursing your meals and gas, in addition to paying for your hotel stay. I really do not want you to feel like you're being taken advantage of because you are appreciated and the company does not have a problem paying for your expenses.  It's just that they could not justify paying for 36 hours of drive time when they were willing to pay for your hotel stay.  I understand that you did not want to complain but we want you to be comfortable when you stay overnight. Moving forward, please let us know when you are uncomfortable with a hotel stay or any other situation. I hope that you understand.
>
> If you accept the new position, it will be up to you whether you want to drive or stay overnight.  The company will pay you at a set rate that we discussed on yesterday. We can talk when you have time. Tiffany it is and has been a pleasure working with you and I hope that you feel the same and we can move forward. Of course, if you accept the new position, all of this will be a non issue.

(Id; Plaintiff's Exhibit 2 to Green depo.).³ Porter told plaintiff that "they were not going to pay [plaintiff] for the thirty-two hours because it equated to resulting in them having to pay [plaintiff] overtime." (Snipes depo., pp. 45-48). Including her commuting time to Dothan, plaintiff worked more than forty hours during the week of June 6, 2011. (Id., pp. 48-49 and Exhibit 5).

## THE SUMMARY JUDGMENT STANDARD

A party seeking summary judgment bears the initial burden of demonstrating to the court the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions that it believes show an absence of any genuine issue of material fact. Hairston v. Gainesville Publishing Co., 9 F.3d 913 (11th Cir. 1993).

For summary judgment purposes, an issue of fact is "material" if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Matsushita Electrical Industrial Company v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The court must view the evidence, and all factual inferences properly drawn from the evidence, in the light most favorable to the nonmoving party. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir.

---

³ The new position to which Porter referred was for a full-time "floater" pharmacist, a job that plaintiff and Porter had been discussing. NEP offered the position to plaintiff by e-mail later that same day. (See Plaintiff's Exhibit 7 to Green depo.; Porter depo., pp. 46-60).

1992); Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987).  It is improper for this court to weigh conflicting evidence or make credibility determinations; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.  Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989) (citation omitted).

> Where the moving party will bear the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must support its motion with credible evidence . . . that would entitle it to summary judgment unless the non-moving party, in response, come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.

Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993)(quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)(*en banc*)).

## DISCUSSION

### Count I - Unpaid Overtime

In Count I of her complaint, plaintiff alleges that NEP willfully "failed or refused to pay plaintiff time and a half for her hours over 40 in every work week [a]s required by the FLSA." (Complaint, ¶¶ 12-13).  For this alleged violation, she demands judgment against defendant for her unpaid overtime, liquidated damages, attorney's fees and costs. (Id., Count I). NEP first contends that it is entitled to summary judgment on Count I because plaintiff was an "exempt" employee within the professional and administrative exemption to the FLSA set forth in 29 U.S.C. § 213(a)(1) and, accordingly, was not entitled to overtime pay.

9

> The FLSA establishes minimum labor standards to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). In other words, the statute was designed to "aid the unprotected, unorganized, and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 n. 18, 65 S.Ct. 895, 902 n. 18, 89 L.Ed. 1296 (1945). One of the standards is to pay employees "engaged in commerce or in the production of commerce" overtime when an employee works more than forty hours in a week. 29 U.S.C. § 207(a)(1). But, an exemption from the overtime pay requirement exists for employees in a "bona fide executive, administrative, or professional capacity" or "outside salesman," as defined by regulations of the Secretary. 29 U.S.C. § 213(a)(1).

Hogan v. Allstate Ins. Co., 361 F.3d 621, 625 (11th Cir. 2004). The employer bears the burden of proving the exemption, and the court construes the overtime provisions of the FLSA against the employer. Id.

To satisfy its burden of proving that plaintiff is an exempt employee, defendant must show that: (1) plaintiff's "primary duty [is] the performance of work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction" and (2) that she is "[c]ompensated on a salary or fee basis at a rate of not less than $455 per week ... exclusive of board, lodging, or other facilities[.]" 29 C.F.R. §§ 541.300(a), 541.301(a), 541.301(c).[4] Plaintiff concedes that her work for NEP satisfies the "duties" element of the exemption; she contends, however, that she was not paid

---

[4] The statute setting forth exemptions from the minimum wage and overtime requirements of the FLSA defers to the Secretary to define by regulation the terms "executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).

on a salary basis. (See Plaintiff's brief, Doc. # 22 at p. 6 ("Snipes concedes that her education and duties would qualify her for exemption from the FLSA requirements as a professional, except that she was not paid on a 'salary basis' as required by the Act and regulations."). NEP contends that it paid plaintiff on a salary basis – *i.e.,* a base salary that was calculated at $60.00 per hour for a 24-hour work week, and $60.00 per hour for each hour worked in excess of twenty-four hours; plaintiff contends that NEP paid her on an hourly basis, at a wage of $60.00 per hour.

Generally, "[a]n employee will be considered to be paid on a 'salary basis' ... if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). "An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis. ... [T]he exemption is not lost if an exempt employee who is guaranteed at least $455 each week paid on a salary basis also receives additional compensation based on hours worked for work beyond the normal workweek.  Such additional compensation may be paid on any basis (*e.g.* flat sum, bonus payment, straight-time hourly amount, time and one-half or any other basis)[.]"  29 C.F.R. § 541.604(a).  "An exempt employee's earnings may be computed on an hourly, a daily or

11

a shift basis, without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and a reasonable relationship exists between the guaranteed amount and the amount earned.  The reasonable relationship test will be met if the weekly guarantee is roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek." 29 C.F.R. § 541.604(b).  Additionally, "[a]n employer is not required to pay the full salary in the initial or terminal week of employment.  Rather, an employer may pay a proportionate part of an employee's full salary for the time actually worked in the first and last week of employment.  In such weeks, the payment of an hourly or daily equivalent of the employee's full salary for the time actually worked will meet the requirement." 29 C.F.R. § 541.602(b)(6).[5]

Plaintiff contends that, "[f]or purposes of this motion, plaintiff was an hourly employee" because she "was told that she would be paid $60 per hour" and because "$60/hr" is "reflected on NEP's hiring documentation." (Doc. # 22, pp. 2, 6).  As it must, the court

---

[5] Although whether plaintiff is paid on a salary basis is critical, neither party cited any of the Department of Labor regulations in 29 C.F.R. Part 541, Subpart G, "Salary Requirements[.]"  Both parties cited an obsolete regulatory provision – 29 C.F.R. § 541.118 – and, on this issue, the sole case cited by defense counsel is an out-of-circuit decision applying the obsolete regulation.  (See Defendant's brief, Doc. #20, p. 14; Plaintiff's brief, Doc. # 22, p. 6; Defendant's reply brief, Doc. # 26, pp. 3-4).  It is undisputed that plaintiff's claims arose after August 23, 2004, the effective date of the new regulatory provisions defining the FLSA's "white collar" exemption.  See 69 FR 22260, "Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees" (Apr. 23, 2004).  Therefore, the court looks to Subpart G – 29 C.F.R. §§ 541.600 through 541.606 – in analyzing the "salary basis" issue.

12

accepts plaintiff's testimony as true. However, the relevant inquiry is the manner in which NEP actually paid the plaintiff. See 29 C.F.R. § 541.602(a)(an employee is paid on a salary basis "if the employee regularly *receives each pay period* on a weekly, or less frequent basis, a predetermined amount ....")(emphasis added). Plaintiff argues that "since [she] regularly worked three days per week until she began traveling the payroll does not provide a basis for finding that she was not hourly." (Doc. # 22, p. 6). However, it is undisputed that NEP did not pay plaintiff weekly but, instead, on a semi-monthly pay period. The Department of Labor's regulatory definition of "salary basis" looks to whether an employee received a predetermined amount within each pay period. See 29 C.F.R. § 541.602(a). Additionally, as noted above, an employer does not lose the benefit of the exemption by computing an employee's pay on an hourly basis, so long as the employer pays a guaranteed amount of "at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked," and the guaranteed amount bears a reasonable relationship to the amount earned. 29 C.F.R. § 541.604(b).

NEP's record of plaintiff's pay, which plaintiff testified accurately represents what NEP paid her, demonstrates that plaintiff received the same amount ($3,120.00) for each semi-monthly pay period from the first pay period in September through the first pay period in April. Thereafter, when plaintiff worked in the travel assignment, plaintiff's pay included an additional hourly amount above $3,120.00. Plaintiff testified that she worked "about 24 hours" in each week before she began the travel assignment, and that she was paid the same

amount in each semi-monthly pay period even though the number of hours she worked fluctuated between pay periods, depending on how the pay period fell in relation to the work week. Plaintiff received less than $3,120.00 for only one pay period in which she performed any work for NEP – NEP paid her $780 in her first paycheck, issued on September 7, 2010. Plaintiff testified that this was payment for a few hours of training when she started working for the company.

It is undisputed that plaintiff's pay was calculated on the basis of a pay rate of sixty dollars per hour. Green's testimony that she used the pay rate of "$60/hr" to calculate plaintiff's annual salary (Green depo., pp. 30-31) is supported by the pay records; the amount plaintiff received for every pay period before she began the travel assignment – $3,120.00 – is equivalent to 24 hours/week multiplied by 52 weeks/year, divided by 24 pay periods/year, multiplied by $60/hour. In the first pay period of September 2010, plaintiff worked only forty-eight hours but was paid $3,120.00 – *i.e.*, an amount in excess of $60 per hour of work. (Snipes depo., pp. 61, 70-71, 196-98 and Exhibits 6 and 20). The fact that NEP paid plaintiff an hourly amount for work in excess of twenty-four hours each week, and that her pay for those periods in which she worked more than twenty-four hours each week equates to an hourly rate of $60 per hour, does not defeat NEP's claim of exemption. (See 29 C.F.R. § 541.604). Plaintiff's pay of $3,120.00 for each semi-monthly pay period translates to a weekly pay amount of $1,440.00, well in excess of the minimum weekly pay of $455 (see § 541.300(a)(1)) required for the "professional employee" exemption.

Defendant has satisfied its burden of demonstrating that plaintiff is subject to the exemption set forth in 29 U.S.C. § 213(a)(1) from the FLSA's overtime pay requirement. It has introduced evidence affirmatively establishing that plaintiff was paid on a salary basis. The only evidence plaintiff cites as demonstrating a dispute of fact is her testimony that she was told she would be paid hourly and the employment form on which Green annotated "60/hr" on the "Salary" line.  (See Plaintiff's brief, Doc. # 22, pp. 2, 6).  However, the record as a whole – including the evidence cited by plaintiff – does not permit a reasonable conclusion that plaintiff was not paid on a salary basis.  Accordingly, NEP is entitled to summary judgment on Count I, plaintiff's claim for unpaid overtime.[6]

## Count II - Retaliatory Discharge

In Count II, plaintiff complains that NEP terminated her employment "on or about June 22, 2011 in retaliation for complaining about defendant's violation of the Fair Labor Standards Act by failing to pay her overtime as required." (Doc. # 1, Count II).  Pursuant to the FLSA's anti-retaliation provision, it is unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]."  29

---

[6] NEP's argument that plaintiff's commuting time is non-compensable under the Portal-to-Portal Act (29 U.S.C. § 251, et seq.) ignores plaintiff's testimony, which must be construed in plaintiff's favor on this motion, that she and Porter agreed that she "would be compensated for her travel time" (Snipes depo., p. 138; see also id. at pp. 176,184 and Exhibit 19) and 29 U.S.C. § 254(b)(providing that employer is not relieved from liability if an activity that is otherwise non-compensable under the statute is compensable by a written or non-written contract between the employee and employer).

U.S.C. § 215(a)(3). To establish a *prima facie* case of retaliation under the FLSA, plaintiff must show that (1) she engaged in activity protected under the FLSA; (2) she suffered adverse action; and (3) a causal connection between her protected activity and the adverse action. Wolf v. Coca-Cola Co., 200 F.3d 1337, 1342-43 (11th Cir. 2000). Defendant concedes an adverse action but contends that plaintiff can establish neither protected activity nor causation.[7] Plaintiff's retaliation claim rests on an e-mail she sent to Mims on June 22, 2011. (See Plaintiff's brief, Doc. # 22, p. 8). Defendant contends that this e-mail does not constitute protected activity under the FLSA because "there was nothing in Ms. Snipes['] complaint to NEP that was specific enough to alert the company she was complaining of any

---

[7] Defendant argues that plaintiff cannot establish the causation element because she "relies solely on temporal proximity between her email to Daniel Mims and her employment ending as evidence of causation." (Doc. # 20, p. 24). Defendant cites Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000), as authority in support of its argument that "[t]emporal proximity alone is not enough to establish a causal connection between an alleged protected act and an adverse action." (Doc. # 20, p. 25; see also Defendant's reply brief, Doc. # 26, p. 8 ("Timing alone does not establish causation.")(citing Brungart). Plaintiff complained to Mims about her pay by e-mail on the afternoon of June 22, 2011; he responded to her by e-mail on Friday, June 24th, observing that "[t]he fact that you have consistently gone over LaTonage to contact me with your concerns gives us the impression that you are obstinate and insubordinate[;]" and plaintiff's employment was terminated on the morning of June 25th, at Mims' direction. (Exhibits 17, 18 and 19 to Snipes depo.; Mims depo., pp. 42-44). In Brungart, the Eleventh Circuit observed that "[t]he general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action *is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection*. However, there is this exception: temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection *where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct*." 231 F.3d at 799 (citations omitted)(emphasis added). Here, Mims knew of plaintiff's complaint when he told Porter to offer the full-time position to someone else. Defendant's citation to Brungart is disingenuous, and its "temporal proximity" argument is frivolous. See Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007)("The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action.")(citing Brungart).

unlawful conduct under the FLSA." (Doc. # 20, pp. 22-24). Plaintiff responds that, "[w]hile she does not mention the FLSA, 'magic words' are not required. Her email clearly addresses the failure to pay her for time worked and the fact that this was a special assignment. That is a complaint involving her rights under this statute." (Doc. # 22, p. 8).

In her e-mail to Mims, plaintiff wrote:

Daniel,

I am writing to you because I feel that there is a divide somewhere in what has been communicated to me and what is getting back to you with regards to this travel assignment. I received an email from LaTonya on yesterday stating that the company would only pay for 4 hours of travel time per week. So, I called her to get a better understanding of what she was saying to me and that is when I learned that my check would be deficient 32 hours. What LaTonya neglected to tell everyone involved in this situation is that from the beginning she gave me an option to drive every day or stay at a hotel and told me that at any time those options were strictly up to me. So, after I had two bad experiences (mold in the bathrooms; dirty water coming out of the shower and faucets) with hotels, I decided to drive instead of arranging a hotel stay. So, when I get a call from her to tell me that the company would not be paying me, that just left me with hurt feelings because I am questioning what I have done to deserve this type of treatment.

I have put in some long hours and hard work during this entire Dothan experience, as well as the Mobile pharmacy experience because I worked both outpatient and inpatient sides due to the death of K-Ray's mother and Gregg being on vacation my first week there.

And, at every turn, something has changed with regards to my compensation, hours, hotel arrangements, etc when I have consistently worked hard and given my best. To learn that I will not receive pay for hours and time that I have worked when I was given the okay is not fair. How would you feel if this were you? If you were placed in the same situation in which I have been placed,

17

would you feel that this is fair? If we are all growing in the best way to do travel assignments from this point further, that is fine. I am not trying to place blame or point fingers. I am just requesting a better line of communication moving forward and consistency in what I am told. In observing situations where problems have occurred in the company whether with personal or external customers, communication has been the principal issue.

Thanks for your time!

Sincerely,

Dr. Tiffany R. Snipes

(Exhibit 19 to Snipes depo.).

The court agrees with plaintiff's premise that a complaint need not reference the FLSA expressly to support a claim under § 215(a)(3), the FLSA's anti-retaliation provision. See Johnson v. Advertiser Co., 778 F.Supp.2d 1270, 1278 (M.D. Ala. 2011)("Even though Johnson may not have mentioned the FLSA by name in any of his internal complaints, this does not disqualify his statements from being considered protected activity."). However, to constitute protected activity, a complaint must be "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the [FLSA] and a call for their protection." Kasten v. Saint-Gobain Performance Plastics Corp., ___ U.S. __, 131 S.Ct. 1325, 1335 (2011). Plaintiff's e-mail to Mims makes clear that plaintiff believed that NEP was treating her unfairly by refusing, after plaintiff "was given the okay[,]" to pay her for 32 hours of commuting time to Dothan.

However, nothing in plaintiff's e-mail suggests that she believes NEP's conduct to be unlawful. In the concluding paragraph of her e-mail, plaintiff states, "If we are all growing in the best way to do travel assignments from this point further, that is fine. I am not trying to place blame or point fingers. I am just requesting a better line of communication moving forward and consistency in what I am told." (Exhibit 19 to Snipes depo.). This statement suggests that plaintiff's complaint is that NEP's failure to pay for the 32 hours of travel time was not consistent with what Porter had told plaintiff, not that plaintiff believed the failure to pay was unlawful. Plaintiff does not complain (as she alleges in her complaint) that defendant failed "to pay her overtime as required" – her e-mail does not allude to non-payment of overtime, and does not indicate that the thirty-two hours at issue were worked in excess of forty hours in a work week. Neither does plaintiff's e-mail suggest that NEP's failure to pay for her time spent commuting each day to Dothan constituted a failure to pay plaintiff the minimum wage mandated by the FLSA. The evidence of record is simply not sufficient to permit a reasonable conclusion that a reasonable employer would have understood that plaintiff was asserting a violation of her rights under the FLSA. Plaintiff's complaint to Mims is not activity protected by the FLSA's anti-retaliation provision.[8] In the

---

[8] Even if the e-mail could reasonably be understood to complain of a failure to pay overtime pursuant to the FLSA, plaintiff's belief that she was an hourly wage employee entitled to overtime was not objectively reasonable in view of the fact that she received the same amount of pay in every pay period ($3,120.00) while she was working shifts as a pharmacist at NEP's Montgomery pharmacy, even though – as she testified – she did not work the same number of hours in each such pay period. For this additional reason, plaintiff's complaint to Mims is not activity protected by the FLSA's anti-retaliation provision. See Howard v. Walgreen Co., 605 F.3d 1239, 1245 (11th Cir. 2010)(no statutorily protected conduct under Title VII's anti-retaliation provision, where plaintiff's

absence of protected activity, plaintiff cannot establish a *prima facie* case of retaliation. Therefore, NEP is entitled to summary judgment on Count II, plaintiff's FLSA retaliation claim.[9]

## CONCLUSION

For the foregoing reasons, it is

ORDERED that defendant's motion for summary judgment (Doc. # 18) is GRANTED. A separate judgment will be entered.

DONE, this 27th day of February, 2013.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

---

belief that his supervisor had discriminated against him was not objectively reasonable, even if subjectively held); Butler v. Alabama Dept. of Transportation, 536 F.3d 1209, 1213 (11th Cir. 2008)(no protected activity for purposes of Title VII's anti-retaliation provision where, assuming that plaintiff subjectively believed that co-worker's use of racial epithets constituted an unlawful employment practice by her employer, any such belief was not objectively reasonable); Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1328 (11th Cir. 1998)(employee's request for accommodation did not constitute protected activity for purposes of retaliation claim under the ADA, in the absence of evidence that plaintiff's belief that his back injury rendered him disabled was objectively reasonable).

[9] The court does not, accordingly, reach defendant's argument that plaintiff cannot establish pretext.